## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WILLIAM GURULE,

      Plaintiff,

vs.                                                                                         No. CIV 04-0610 JB/RLP

SAN JUAN COUNTY GOVERNMENT,

      Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment, filed September 17, 2004 (Doc. 5). The Court held a hearing on this motion on December 14, 2004. The primary issue is whether Plaintiff William Gurule has established the existence of a genuine question of fact whether he was treated differently than similarly situated employees. Because the Court concludes that Gurule has not offered sufficient evidence that he was treated differently than similarly situated employees, the Court will grant the Defendant San Juan County Government's motion for summary judgment.[1]

---

[1] At the hearing, Gurule argued that the Court should not grant summary judgment because he needed to conduct more discovery. Gurule did not, however, file a motion under rule 56(f) of the Federal Rules of Civil Procedure. Nor did he file affidavits in advance of the hearing indicating that he could not produce evidence. There were no arguments in Gurule's briefing that the time for discovery was inadequate. Gurule also did not, in his oral motion, meet the standards that the United States Court of Appeals for the Tenth Circuit has established for a rule 56(f) affidavit. The Court thus declined to order a continuance for additional discovery.

## BACKGROUND

**1.     Gurule's Termination.**

On September 16, 2001, Gurule was arrested and charged with possession of cocaine and driving while under the influence ("DWI"). <u>See</u> Criminal Information, No. CR-2001-883-1, New Mexico Eleventh District Court, at 1 - 3.  At that time, San Juan County Government (the "County") Public Works Department employed Gurule as a Maintenance Supervisor in the Public Works Department.  <u>See</u> Complaint for Damages and Jury Demand ¶ 8, at 2, filed June 1, 2004 (hereinafter "Complaint"); Affidavit of Dave Keck ¶ 2, at 3 (executed September 3, 2004)(hereinafter "Keck Aff.").  The Maintenance Supervisor's position required Gurule to operate a County vehicle or his own vehicle on County business.  <u>See</u> Keck Aff. ¶ 4, at 1.

On December 13, 2001, the New Mexico District Court for the Eleventh District convicted Gurule of the DWI charge and entered a guilty plea to the possession charge.  <u>See</u> Judgment Sentence Order Partially Suspending Sentence Order for Conditional Discharge and Probationary Supervision, No. CR-2001-0883-1, at 1; Complaint  ¶ 7, at 2.  The state court sentenced Gurule to probation on the DWI charge on January 11, 2002.  The state court deferred judgment and sentence for 18 months on the possession charge.  <u>See</u> id. ¶ 6, at 3.  The state court did not revoke Gurule's driver's license as a result of the DWI conviction.

Gurule notified his supervisor, Dave Keck, of his DWI conviction on January 7, 2002.  <u>See</u> Keck Aff. ¶ 6, at 2.  The County terminated Gurule's employment on January 14, 2002.  <u>See</u> Complaint for Damages and Jury Demand ¶ 8, at 2, filed June 1, 2004 (hereinafter "Complaint").  The County cited Gurule's DWI conviction as the reason for the termination.  <u>See</u> <u>id.</u> ¶ 8, at 2.

Before his termination, Gurule requested that he be allowed to participate in the Employee

Assistance Program.   See Affidavit of William Gurule ¶ 3, at 1 (executed October 6, 2004)(hereinafter "Gurule Aff."). The only non-driving position available was that of "compactor attendant."   See Keck Aff. ¶ 8, at 2.   At the time of Gurule's dismissal, that position was either unavailable or Gurule did not want the position.   See id.

2.     **The County's Policy.**

The San Juan County Personnel Handbook addresses employee drug and alcohol related convictions.  Section 17.4 provides: "Any employee who is convicted of a drug or alcohol related criminal offense may be terminated."  San Juan County Personnel Handbook, Ordinance 34, § 17.4 (hereinafter "County Ordinance").   Section 17.4 also indicates that an employee who is not terminated may be required to complete an Employee Assistance Program.   See id.  Under § 17.4, an employee convicted of alcohol-related driving offense must notify his supervisor of the conviction. See id.

Section 17.6.1 of the handbook addresses employees convicted of DWI.  It states:

> 17.6.1 Persons Convicted of DUI May Not Drive.  It is the policy of San Juan County that any employee who is convicted of driving under the influence of an intoxicant such as alcohol or drugs shall not be permitted to operate any County vehicle (or operate any personal vehicle on County business), for a period of three (3) years, subject only to the exception below.

County Ordinance 34, § 17.6.1.  Section 17.6.2 provides an exception to § 17.6.1, allowing for reinstatement of driving privileges after one year if the employee satisfies certain requirements. See County Ordinance 34, § 17.6.2.

The County's Personnel Ordinance provides for a grievance process, which includes pre-termination and post-termination hearings and a final decision that is subject to judicial review in the state district court.  Gurule followed the grievance process through the hearing stages, but did not

seek judicial review of the termination.

The County Ordinance addresses alcohol and drug convictions in § 17.4 to § 17.6.4 and alcohol and drug testing in § 17.3.  With respect to drug testing, the County Ordinance provides for (i) random testing for each holder of a Commercial Driver's License; and (ii) testing upon reasonable suspicion that an employee may be impaired by drugs or alcohol on the job.  See County Ordinance 34, 17.3.1-2.  Absent any criminal conviction, and absent and indication that an employee was impaired at work, a single positive test does not result in the automatic loss of driving privileges.  See id. 17.3.4.1; Affidavit James O'Neill ¶ 7, at 2 (executed October 26, 2004)(hereinafter "O'Neill Aff.").

### 3.   <u>Other County Employees.</u>

County employees Ray Amos and David Salazar each tested positive for drugs on one occasion of random drug testing.  See O'Neill Aff. ¶¶ 10-11, at 2.  There was no indication that either was impaired at work.  See id. ¶¶ 10-11, at 2-3.  Amos and Salazar did not have drug or alcohol convictions.  The County allowed them to participate in the employee assistance program.  See Response  ¶¶ 16-17, at 2.  Gurule Aff. ¶¶ 2-3, at 1.

County employee Bobby Lee tested positive for drugs as a result of a random drug test. There was no indication that Lee was impaired at work. See O'Neill Aff. at  ¶ 12, at 3.  Lee did not have drug or alcohol convictions.  The County allowed Lee to participate in the Employee Assistance Program.  See Response  ¶¶ 16-17, at 2.  When Lee tested positive for drugs a second time, he resigned rather than be terminated.  See O'Neill Aff.  ¶ 12, at 3.

Employee Ray Burchfield tested positive for drugs as a result of a random drug test.  There was no indication that Burchfield was impaired at work. See id. ¶ 13, at 3.  The County allowed him

to participate in the Employee Assistance Program.  Burchfield was subsequently convicted of DWI.

See id.  The County terminated Burchfield because, at that time, there were no positions available that

did not require the operation of a motor vehicle.  See id.  Burchfield had been employed by the

County for 18 years at the time of his termination.

Employee Emily Norman was convicted of DWI in 1990 -- five years before the adoption of

the County's current DWI conviction policy.   See id. ¶ 15, at 3-4. The County policy at the time of

Norman's conviction did not provide for termination and suspension of driving privileges in the event

of a DWI conviction.  Norman was not terminated.  See id. ¶ 14, at 3; Response ¶¶  16-17, at 2.

County employee Charlie Crawford was supervisor in the County Parks and Maintenance

Department when he was convicted of DWI.[2] See O'Neill Aff. ¶ 15, at 3-4.  Mr. Crawford accepted

a non-driving position, which resulted in a demotion and a decrease in salary.  See id.  Mr. Crawford

lost his  driving privileges, but the County reinstated those privileges after one year, upon completion

of the requirements for reinstatement.  See id.  Crawford has not yet regained his supervisory status.

See id.

4.     **Past supervisor.**

Steven Ryan, the former Public Works Director for the County, left his employment with the

County in 1994.  See Complaint ¶ 10, at 2.  Gurule had an excellent relationship with Ryan and was

---

[2] In his affidavit, Gurule states: "Also, it is my understanding that Mr. Crawford has multiple DWI's."  Gurule Aff. ¶ 4, at 2.  Gurule does not explain where he got his "understanding" and does not indicate whether it is based on hearsay or some other evidence.  Moreover, Gurule did not present evidence that Crawford had been convicted of more than one DWI.  More important, however, there is no indication that the County knew Crawford had been convicted of more than one DWI.  See O'Neill Aff. ¶ 15, at 3-4.  Gurule's "understanding" of Crawford's DWI history is therefore not sufficient to defeat summary judgment, because he has not introduced evidence that these alleged convictions are similar to his.

publically supportive of him.  See id.

## PROCEDURAL BACKGROUND

On June 1, 2004, Gurule filed a four count Complaint.  Count I alleges breach of contract based on the County's policies stated in the County Personnel Ordinance.  Count II alleges breach of the implied covenant of good faith and fair dealing.  In Count III, Gurule alleges national origin discrimination through disparate treatment under 42 U.S.C. § 1983 in connection with the County's refusal to allow him to participate in the Employee Assistance Program after his DWI conviction. Gurule contends that he was the victim of ethnic discrimination in violation of the Equal Protection Clause of the  Fourteenth Amendment and that, without any rational basis, the County treated him differently from  similarly situated employees.   In Count IV, Gurule contends that the County terminated him because of his political support for a former Public Works Director, Steve Ryan, in violation of Gurule's First Amendment rights.

The County  moves pursuant to rule 56 of the Federal Rules of Civil Procedure for an order directing that summary judgment be entered in favor of the County.  Gurule does not oppose most of the County's motion, asking only that the Court deny the County's motion for summary judgment on the disparate treatment claim.[3]

## STANDARD FOR DECIDING MOTION FOR SUMMARY JUDGMENT

Rule 56 allows a court to grant summary judgment if a party is entitled to judgment as a

_____

[3] Gurule's response to the County's motion for summary judgment does not specifically state that he is not opposing summary judgment on Counts I, II, and IV.  At the hearing on this motion, counsel for Gurule represented to the Court that Gurule was only opposing summary judgment on Count III, the disparate treatment count.  See Transcript of Hearing at 16:10-15.

The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

matter of law and there are no genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, the non-moving party must contradict facts that the movant specifically avers.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).  The court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried or where the moving party is not entitled to a judgment as a matter of law.  See Kennedy v. Silas Mason Co., 334 U.S. 249, 252 (1948).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. at 323.  The moving party can meet this burden by "pointing out to the court a lack of evidence as to an essential element of the non-movant's claim. The burden then shifts to the non-movant to present specific facts, admissible at trial, from which a rational trier of fact could find for the non-movant."  Bewley v. City of Duncan, 149 F.3d 1190 (table), 1998 WL 314382, at *4 (10th Cir. 1998)(citing Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. at 324).  The non-moving party may not rest on his pleadings but must set forth specific facts.  See Applied Genetics Int'l v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

For the purposes of summary judgment, the court will assume the evidence of the non-moving party to be true, will resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If the evidence, interpreted favorably to the non-moving party, could persuade a reasonable jury to find in favor of the non-

moving party, the court should deny summary judgment.  See MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991).

A court should, however, grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  A "genuine" factual dispute requires the non-moving party to show more than a mere scintilla of evidence to overcome a motion for summary judgment.  Id. at 252.  A court may grant summary judgment if the non-moving party's evidence is merely colorable or is not significantly probative.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-51.  Under rule 56(e), only statements made with actual knowledge will support or counter a motion for summary judgment; the court must disregard statements of mere belief.  See Tavery v. United States, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)(citations omitted).

## LAW ON DISPARATE TREATMENT

1.    **McDonnell Douglas Analysis.**

An equal protection claim brought under § 1983 is evaluated under the analytical framework that the Supreme Court of the United States set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See id. at 802-04; Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991)("In racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in McDonnell Douglas, whether that case is brought under §§ 1981 or 1983 or Title VII.");  Morgan v. Hilti Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  Under

McDonnell Douglas Corp. v. Green, the plaintiff must first set forth a prima facie case of discrimination.  See English v. Colo. Dep't of Corr., 248 F.3d 1002, 1008 (10th Cir. 2001).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its employment related decision. See McDonnell Douglas Corp. v. Green, 411 U.S. at 802.  To withstand summary judgment, a plaintiff must "present[] evidence that the defendant's proffered reason for the employment decision was pretextual-i.e. unworthy of belief."  Kendrick v. Penske Transp. Services, Inc., 220 F.3d at 1230.

**2.    Disparate Treatment.**

> "A claim of disparate treatment encompasses a situation where the employer simply treats some people less favorably than others because of their race, color, religion or national origin. . . . To establish a prima facie case of . . . discrimination . . . [the plaintiff] must demonstrate (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) similarly situated employees were treated differently."

Mitchell v. City and County of Denver, 112 Fed. Appx. 662, 670 (10th Cir. Oct. 12, 2004)(unpublished decision)(internal quotations and citations omitted)(citing Trujillo v. Univ. of Colo. Health Scis. Ctr., 157 F.3d 1211, 1215 (10th Cir.1998)).  See Aramburu v. The Boeing Co., 112 F.3d 1398, 1403 (10th Cir. 1997); EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992); McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1260 (10th Cir. 1988).

**ANALYSIS**

Gurule has not offered sufficient evidence that the County treated him differently than similarly situated employees or that the County's proffered non-discriminatory reason is pretext. There are either material differences between Gurule and the employees with whom he compares himself, or the County treated the similarly situated employees the same.  Thus, the Court will grant

the County summary judgment on all claims.

I.   **GURULE DOES NOT OPPOSE SUMMARY JUDGMENT ON COUNTS I, II, AND IV.**

Gurule does not oppose the County's motion for summary judgment on Counts I, II, and IV. The Court will therefore enter summary judgment on Counts I, II, and IV.

II.   **GURULE HAS NOT ESTABLISHED A QUESTION OF FACT WHETHER THE COUNTY TREATED HIM DIFFERENTLY THAN SIMILARLY SITUATED EMPLOYEES.**

The Court concludes that Gurule has not established a question of fact whether the County treated him differently than similarly situated employees.  Gurule argues that Amos, Salazar, Lee, Burchfield, Norman and Crawford are similarly situated County employees who the County treated differently than it did him.  Burchfield is the only employee that appears to be similarly situated to Gurule.  The County did not, however, treat, Burchfield differently than it treated Gurule.

Amos, Salazar, and Lee each tested positive for drugs, and the County allowed them to participate in the Employee Assistance Program.  There was no indication, however, that they were impaired at work.  Nor did these employees have drug or alcohol convictions.  The County's policy regarding drug testing differs in significant regards from its policy regarding DWI convictions.  Unlike a drug or alcohol conviction, a positive drug test, absent an indication that an employee was impaired at work, does not result in an automatic loss of driving privileges.  Because  the County policy did not require loss of driving privileges, Amos, Salazar, and Lee are not similarly situated to Gurule.

Burchfield also tested positive for drugs, and the County allowed him to participate in the Employee Assistance Program.  There was no indication that he was impaired at work and at that time he did not have a drug or alcohol conviction.  Burchfield was later convicted of DWI.  The

County then terminated Burchfield's employment, because there were no positions available that did not require the operation of a motor vehicle. Burchfield and Gurule are thus similarly situated in that both were convicted of DWI. This comparison is not helpful to Gurule, however, because the County treated them in the same way. The County fired both of them in accordance with its policy.

Norman was also convicted of DWI. Her conviction, however, occurred five years before the adoption of the County's current DWI conviction policy. Because the County policy at the time of Norman's conviction did not provide for termination or suspension of driving privileges in the event of a DWI conviction, Norman is not similarly situated to Gurule.

Crawford too was convicted of DWI. Unlike Gurule, Crawford accepted a non-driving position with the County.[4] The County reinstated Crawford's driving privileges after one year, upon completion of the requirements for reinstatement. In contrast, at the time of Gurule's dismissal, a non-driving position was either unavailable or Gurule did not want the position. Thus, Crawford and Gurule are not similarly situated.

Given that Gurule has not offered sufficient evidence the County treated him differently than similarly situated employees. Gurule has not shown a genuine issue of material fact regarding one element of his prima facie case. Accordingly, Gurule has not offered sufficient evidence to show his prima facie case. The Court will, therefore, grant summary judgment for the County on Count III, his disparate treatment case.

---

[4] In his affidavit, Gurule states that "other employees were convicted of DWI's and allowed to retain their jobs." Gurule Aff. ¶ 4, at 10. While there is no dispute that Crawford retained "a" job, Gurule does not dispute that, although the County continued to employ Crawford, he accepted a different, non-driving position. The Court does not believe that this single, general sentence in Gurule's affidavit is sufficient to raise a genuine issue of fact that Crawford was allowed to retain his same position after he was convicted of DWI.

## II.     GURULE HAS NOT SHOWN A GENUINE QUESTION OF FACT WHETHER THE COUNTY'S NON-DISCRIMINATORY REASON IS PRETEXT.

Even if Gurule could establish that there were  similarly situated employees that were treated differently by the County, the plaintiff has not shown there is a genuine issue of material fact that the County's proffered non-discriminatory reasons are pretext. The County maintains that it terminated Gurule because of his DWI conviction.  Gurule, however, contends that his political support for Ryan was the reason for his termination. Gurule alleges in his Complaint: "Plaintiff believes he was treated differently because of his support of the former Public Works Director, Steve Ryan."  Complaint ¶ 10, at 2.  At the hearing on this motion, Gurule's counsel argued that it was Gurule's opinion that his support of Ryan effected the way the County treated him. See Transcript at 14:7-19.  Gurule did not, however, state this in his affidavit or offer any other evidence to support his opinion.  Gurule, thus, offers no competent evidence to support this allegation.  The Court cannot, on the record before it, see a causal connection between Gurule's termination in 2002 and Ryan's departure from the County in 1994. See Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1209-10 (10th Cir. 1999)(recognizing that derogatory "comments may serve as circumstantial evidence of discrimination, [but] the plaintiff must still show some nexus between the statements and the defendant's decision to terminate the employee")(citation omitted), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 98-102 (2003).   The Court concludes that Gurule has not established a genuine issue of material fact regarding pretext.

The County is entitled to summary judgment as a matter of law.

**IT IS ORDERED** that the County's Motion for Summary Judgment is granted and the Plaintiff's claims are dismissed with prejudice.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Gilbert J. Vigil
Albuquerque, New Mexico

      *Attorney for the Plaintiff*

Ronald J. Childress
Elaine R. Dailey
Klecan & Childress
Albuquerque, New Mexico

      *Attorneys for the Defendant*